USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-7-10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AJA GONZALEZ,

                                    Plaintiff,

                    - against -

ALLIED BARTON SECURITY SERVICES, et al.,

                                    Defendants.

**REPORT AND**
**RECOMMENDATION**

**08 Civ. 9291 (RJS) (RLE)**

To the HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

## I. INTRODUCTION

Aja Gonzalez filed this *pro se* action against AlliedBarton Security Services ("AlliedBarton") on October 30, 2008, and amended her complaint on March 19, 2009, adding New York City Department of Transportation ("DOT" or "City") and Service Employees International Union, Local 32BJ's ("Local 32 BJ"), alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") for the termination of her employment by AlliedBarton. The Court granted Local 32 BJ's Rule 12(b)(6) Motion to Dismiss on February 2, 2010. Before the Court are separate Motions for Summary Judgment pursuant to Fed. R. Civ. P. Rule 56(c) brought by the City and AlliedBarton. For the reasons that follow, I recommend that the Motions (Doc Nos. 61 & 66) be **GRANTED** and that the Complaint be **DISMISSED** in its entirety.

## II. BACKGROUND

Gonzalez was an employee of Tristar Patrol Services ("Tristar") and, subsequently, AlliedBarton. TriStar held a contract to provide security services to the New York City Department of Citywide Administrative Services ("DCAS") until December 1, 2006, at which

time AlliedBarton became DCAS's security services provider. Gonzalez applied to, and was hired by, AlliedBarton. (Mason Decl. Ex. E. AlliedBarton's Personnel File for Aja Gonzalez ("Personnel File") at 1-25; Ex. C, Gonzalez Dep. 35:25-36:1.) AlliedBarton administered her application process, interview, training, drug testing, and required her to agree to and abide by its employee policies, including its authority to discipline its employees. (Mason Decl. Ex. E, Personnel File, at 13,14, 18,19, 40, 53, 54; Ex. C. Gonzalez Dep. 30:6-10, 21-21; 31:3-8.) AlliedBarton paid her salary and AlliedBarton employees delivered her checks while she was on duty. (Mason Decl. Ex. C. Gonzalez Dep. 99:11-24; Ex. E. at 26.) AlliedBarton also terminated Gonzalez's employment. (Mason Decl. Ex. E. Personnel File at 60.)

DOT's contractual authority permits it to "alter or modify the shift hours and number of guards assigned to work, providing 24 hours['] notice" to AlliedBarton. (Mason Decl. Ex. B. at 16.) In practice, when DOT exercises this authority it "communicates the scheduling needs of a particular site location and AlliedBarton determines the appropriate manner to schedule its guards to satisfy the security needs of the site location." (Mason Decl. Ex. D, Decl. of DOT Chief Deputy Director of Security Robert Walker ("Walker Decl.") ¶ 6.) Additionally, DOT could also request additional guards for additional posts created during the term of the contract or reduce security coverage at a post. (DOT's 56.1 Statement ¶ 10.)

On February 11, 2008, Gonzalez was assigned as a security guard at DOT's Flatland's Yard. (Mason Decl. Ex. C. Gonzalez Dep. 34:15-19.) Flatlands is a storage facility that houses expensive DOT equipment and vehicles. (*Id.*) Her duties included remaining aware of her surroundings, ensuring that unauthorized persons did not enter the facility, and guarding the keys to the vehicles at the facility. (*Id.* Gonzalez Dep. 55:1-25, 121:20-25; 122:1-4.) AlliedBarton

2

claims that she was terminated because DOT Investigator Small observed and photographed her sleeping on the job in direct contravention of AlliedBarton's employee policies. (Am. Compl. at 4-5.) Gonzalez had received an employee manual and had been advised that falling asleep on the job could lead to immediate termination. She concedes that she was caught sleeping in the security guard's booth and that she knew that she could be fired for the offense. (Mason Decl. Ex. C. Gonzalez Dep. 67:24-25; 69:16-18; 79:19-25; 83:9-14; 122:1-6, 21-25; 173:15-19; 174:1-8.)

As an investigator, Small was charged with "determining whether security is being maintained at DOT site locations" and if it a site it improperly secured, document and report any violations. (Mason Decl. Ex. G., Small Decl. ¶ 2.) Small documented Gonzalez's breach and sent the incident report to DOT Inspector Vazquez and DOT Chief Deputy Director Walker. (DOT's 56.1 Statement ¶ 46, 47.) Walker contacted AlliedBarton District Manager Fogarty and asked that Gonzalez not be assigned to security posts at DOT locations. (*Id.* ¶ 48.) Following this communication, Fogarty contacted AlliedBarton Account Manager Vargas and requested that Gonzalez's employment be terminated. (*Id.* ¶ 50.)

Gonzalez filed Equal Employment Opportunity Commission ("EEOC") charges of discrimination against AlliedBarton and the City on June 23, 2008, and July, 1, 2008, respectively. The EEOC dismissed those charges on October 30, 2008, and February 23, 2009, respectively. Gonzalez filed her Complaint on October 6, 2008 and an Amended Complaint on March 19, 2009. The Complaint charges Defendants with discrimination based on race and sex, which resulted in the termination of her employment at AlliedBarton in 2008. Gonzalez also alleges invasion of privacy because her photo was taken without permission. Discovery related to

3

the Amended Complaint closed on January 29, 2010. AlliedBarton filed its motion (Def.

AlliedBarton Security Services Mot. for Summ. J. ("AlliedBarton Mot.")) on February 18, 2010,

and DOT filed its motion (Def. New York City Department of Transportation ("DOT Mot.")) on

February 22, 2010. Defendants argue that Gonzalez has not stated a prima facie Title VII claim

and that the reason for her termination was non-discriminatory, neutral, and not a pretext.

Gonzalez filed her responses on March 22 and 26, 2010, reiterating the race and sex

discrimination and invasion of privacy allegations from her Complaints, and adding an allegation

of sexual harassment. AlliedBarton and DOT filed their replies on April 7 and 13, 2010,

respectively.

## III. DISCUSSION

### A.      Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a

motion for summary judgment if it determines that "there is no genuine issue of material fact and

that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Under

this standard, summary judgment is proper if "viewing the record in the light most favorable to

the nonmoving party, the evidence offered demonstrates that there is no genuine issue of fact and

that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v.*

*LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir. 1989) (internal quotations omitted), *rev'd on other*

*grounds*, 496 U.S. 633 (1990). In making this determination, the court does not resolve disputed

factual issues, but reaches a conclusion as to whether there exists "a genuine and material issue

for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1175 (2d Cir. 1993). An

issue of fact is "genuine" if it provides a basis for "a rational trier of fact to find for the non-

moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
Summary judgment is appropriate where no reasonable trier of fact could find in favor of the
nonmoving party, *H. L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005,
1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a
frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d
Cir. 1987).

The party moving for summary judgment bears the initial burden of demonstrating the
absence of any genuine issue of material fact. *See Consarc Corp. v. Marine Midland Bank, N.A.*,
996 F.2d 568 (2d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).
This burden may be met by demonstrating that there is a lack of evidence to support the
nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the
moving party satisfies this initial burden, the nonmoving party must offer "concrete evidence
from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256.
"[T]he mere existence of factual issues -- where those issues are not material to the claims before
the court—will not suffice to defeat a motion for summary judgment." *Quarles v. Gen. Motors
Corp.,* 758 F.2d 839, 840 (2d Cir. 1985). If the nonmoving party fails to respond by "affidavits or
as otherwise provided in [Rule 56, and] set forth specific facts showing that there is a genuine
issue for trial[,] . . . summary judgment, if appropriate, shall be entered against the adverse
party." FED. R. CIV. P. 56(e).

## B.  There was No Employment Relationship Between Gonzalez and DOT

"The existence of an employer-employee relationship is a primary element of Title VII
claims." *Okoi v. El Al Israel Airlines*, 2010 WL 1980263, at *2 (2d Cir. 2010) (citing *Gulino v.*

5

*N.Y. State Educ. Dept.*, 460 F.3d 361, 370 (2d Cir. 2006)). "A joint employer relationship may be found to exist where there is sufficient evidence that the [entity] had immediate control over the other company's employees." *NLRB v. Solid Waste Servs.*, 38 F.3d 93, 94 (2d Cir. 1994). Relevant factors to determine whether there is sufficient control over an employee include commonality of hiring, firing, discipline, pay, insurance, records, and supervision. *Id.*

Gonzalez has failed to allege or present evidence to show that DOT was involved with the hiring, firing, or discipline of AlliedBarton security guards. Gonzalez admits that she applied for the position with AlliedBarton (Mason Decl. Ex. E at 1-25) and completed the application process and training with them. (*Id.* at 40) While DOT had contracted with AlliedBarton to provide guards at specific locations, Gonzalez presents no evidence that DOT made any decisions about the hiring of security guards. Further, it is apparent that AlliedBarton made all decisions about assignment and relocation of its guards, a fact supported by Gonzalez's testimony. (Mason Decl. Ex. C. 99:25; 100:1-12.)

AlliedBarton also pays worker's compensation for work related injuries (Ex. E at 19), and Gonzalez's testimony demonstrates that AlliedBarton paid the guards' salaries even when they were assigned to DOT sites. (Mason Decl. Ex. C. 99:11-24.) Finally, AlliedBarton's employee handbook, submitted with Gonzalez's complaint, indicates that it could discipline and terminate employees for misconduct; including sleeping while on duty and violating posted orders at the work sites. (Mason Decl. Ex. A. 79-80.)

Gonzalez alleges that DOT's Chief Deputy Director of Security requested that AlliedBarton no longer assign Gonzalez to DOT facilitates after learning that she was caught sleeping on the job. She argues that DOT was thereby responsible for her discipline and

6

termination. (Mason Decl. Ex. D. ¶ 15.) However, there is no evidence that DOT hired, fired,

disciplined, or paid AlliedBarton employees. While DOT's was permitted to request that a guard

not be assigned to its sites, AlliedBarton made the final decision about all transfers. DOT's

ability to request reassignment did not constitute an employer relationship. Further, Gonzalez's

specific claim is about termination and it is clear that DOT had no role in her termination. She

has presented no evidence to create a material, factual issue about whether DOT was her

employer, or that DOT was a joint employer. Accordingly, DOT's motion should be

**GRANTED**.

### C.   Gonzalez has Failed to Show Any Material Factual Disputes as to Her Title VII Claim

Under Title VII, plaintiffs must establish by a preponderance of the evidence that the

employer "uses a particular employment practice that causes a disparate impact on the basis of

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). To defeat a motion

for summary judgment, a plaintiff must make a *prima facie* case by showing that (1) he is a

member of a protected class, (2) that he satisfactorily performed the duties required in his

position or was qualified for the position held, (3) suffered an adverse employment action, and

(4) that the circumstances surrounding that action gave rise to an inference of discrimination.

*McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *St. Mary's Honor Ctr. v. Hicks*, 509

U.S. 502, 506 (1993). If these requirements are met, a defendant may rebut the resulting

presumption of discrimination by providing a nondiscriminatory reason for the conduct

underlying the allegations. *Cruz v. Oxford Health Plans, Inc.*, 2008 WL 509195, at *5 (S.D.N.Y.

7

Feb. 26, 2008). If an employer proffers of a legitimate nondiscriminatory reason, the plaintiff has the burden of offering proof that would enable a reasonable factfinder to conclude that the proffered reason was a pretext, and that the plaintiff's protected characteristic was at least one of the motivating factors in the decision. *Carlton v. Mystic Trans. Inc.*, 202 F.3d 129, 135 (2d Cir. 2000).

### 1. Gonzalez has not stated a prima facie case of discrimination

Gonzalez alleges that her termination was a result of race and sex discrimination. She is an African-American woman and therefore a member of a protected class under Title VII. She has also met the objective qualifications for her security guard position, and has suffered an adverse employment action in being fired on February 11, 2008. However, her discrimination allegations are conclusory, and they merely indicate that she violated AlliedBarton's workplace policies.

### a. DOT

Gonzalez's evidence of discrimination is that a "man was automatically" assigned to her former shift (Ex. C. at 88:4-23), and that DOT Director Walker, the person who requested that she be transferred, said that "he don't feel that women should be working the midnight shift," (Ex. C. at 71:8-19). First, AlliedBarton, not DOT, assigned a woman, not a man, to replace Gonzalez. (DOT Ex. J, AlliedBarton Supp. Responses to Pl.'s Interrogatories ¶ 3) Though she testified that her replacement was an African-American, (Ex. C at 132: 24) there is no additional evidence from any party indicating her replacement's race. Because Gonzalez was replaced by someone of her same gender, there is no evidence to support an inference of gender discrimination.

8

In addition, the statement she attributes to Walker, but which he denies,[1] does not raise an inference of discrimination. Isolated derogatory remarks by a decisionmaker alone do not raise an inference of discrimination. *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998). "The remarks must either be accompanied by additional evidence of discrimination, or the plaintiff must demonstrate a nexus between the remarks and the adverse employment action that he suffered." *Hansberry v. Father Flanagan's Boys' Home*, 2004 WL 3152393, at *5 (E.D.N.Y. Nov. 28, 2004) (citing *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004)). "In deciding whether this nexus is established, a court should consider whether the person who made the remarks had some connection to the employment decision, when the remarks were made in relation to the employment decision, and the context and content of the remarks." *Id.* None of these considerations support a nexus between the remarks and the adverse employment action. First, Walker was not a decisionmaker. Second, the alleged remarks were made after the termination. Finally, the alleged remarks were not accompanied by additional evidence of discrimination.

### b.    AlliedBarton

Satisfactory performance is a prima facie element of a Title VII claim. *See McPherson*, 457 F.3d at 215. By admitting that she violated AlliedBarton's policy against sleeping on the job, Gonzalez has failed to establish that she adequately preformed her job. As a security officer, Gonzalez received AlliedBarton's employee handbook and was subject to the policies therein. (AlliedBarton Rule 56.1 Statement ¶ 7, 8.) Sleeping on the job is a violation of AlliedBarton's policies. (Cheverko Decl. Ex. D at 14.) Gonzalez's primary job duties included remaining alert

---

[1] Walker disputes Gonzalez's account of their conversation, which occurred after she was terminated. Walker stated that he told Gonzalez that the area surrounding her worksite was dangerous and that sleeping on the job "place[d] her

and aware of her surrounding and ensuring that no unauthorized persons entered the Flatlands facility. (AlliedBarton Rule 56.1 Statement ¶5, 6.) Gonzalez has admitted falling asleep at her post. The depth of her slumber is underscored by the fact that her supervisor, Vincent Smalls, entered the security booth where she was stationed without Gonzalez noticing, took a photo, and roused her before leaving. (Cheverko Decl., Ex. C, Gonzalez Dep. 122-123.) The keys to the vehicles at the facility were kept inside the booth, and Smalls actions demonstrate that a person intending to steal the vehicle could have succeeded because Gonzalez was asleep. The nexus between Gonzalez's job as a security guard and her failure to remain awake while on duty demonstrate that she was not satisfactorily performing her job.

### 2. Gonzalez's breach of AlliedBarton's policy is a nondiscriminatory, non-pretextual reason for terminating her employment

Even if Gonzalez had established a *prima facie* case, DOT and AlliedBarton had a nondiscriminatory, race and gender neutral reason for their actions—that she fell asleep while working as a security guard. (DOT Mot., Ex. D at 17:17-18:22; Ex. B at 187:4-18.) Furthermore this criterion is objectively reasonable and Gonzalez cannot demonstrate that her termination was a pretext for unlawful discrimination. DOT had a legitimate business reason for requesting reassignment. Upon learning that Gonzalez was asleep during her shift, DOT asked AlliedBarton to reassign her to a non-DOT site because she had failed to ensure the safety of Flatlands Yard. DOT asserts that it acted on a legitimate business reason by requesting her reassignment, a decision the court need not question. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988). Gonzalez offers no evidence that DOT's actions were motivated by race or gender or that DOT's reason is a pretext. Though she states that she was "reprimanded much [more]

---

and the facility at risk." (Mason Decl. Ex. D ¶ 19.)

harshly than male guards" (Pl. Opp'n. at 3), she also states that other male guards who violated

work rules were "warned and removed," (*Id.*), which is consistent with DOT's request to reassign

her.

AlliedBarton's evidence also supports its non-discriminatory reason for her termination.

According to AlliedBarton's district manager, Fogarty, in almost every instance where he has

learned that a guard was sleeping on the job, employment was terminated. (AlliedBarton Mot.,

Fogarty Decl. ¶ 7.) AlliedBarton has not merely articulated this neutral reason, but has

substantiated its action by showing that it is factually supported by Gonzalez's breach. *Prescod v.*

*American Broadcasting Companies, Inc.*, 1985 WL 430, at *14 n.24 (S.D.N.Y. March 19, 1985)

("To the extent that the employer, in the second stage, goes beyond merely articulating a neutral

reason for discharge to substantiating that reason by proving that it has a sound and factually

supported basis, the employee's task of showing that this reason was a pretext will be more

difficult."). Thus, Gonzalez bears the burden of presenting evidence that a factual dispute exists

as to whether AlliedBarton's or DOT's reasons were pretextual.

Gonzalez has submitted no evidence that Defendants' actions correlated with or were

motivated by her sex or race. She has included statements from another AlliedBarton employee,

Cynthia Tompkins, an African-American woman, who claims that she also suffered

discrimination and was unlawfully fired. Tompkins's allegations are the subject of a federal law

suit against AlliedBarton. However, the statement is irrelevant because they do not indicate how

Gonzalez's termination was based on her race or gender. Tompkins, who had a different

supervisor and worked at a different location, was also apparently caught sleeping on the job but

was reassigned rather than terminated. Even assuming that Tompkins's statements are true, she

11

and Gonzalez had different superiors and different work sites, a distinction that undermines the relevance of the statement's use as evidence of racial or gender pretext for Gonzalez's termination. The decisions of different supervisor cannot support an inference of pretext. *See Iuorno v. DuPont Pharmaceuticals Co.*, 129 Fed. Appx. 637, 641-42 (Cir. 2d 2005); *Martinez-Santiago v. Zurich North America Ins. Co.*, No. 07 Civ. 8676 (RJH), 2010 WL 184450, at *8 (S.D.N.Y. January 20, 2010). Furthermore, Tompkins and Gonzalez are both black women, and similarly situated, which undermines Gonzalez's claims that race and gender were the reasons for her termination.

While she believes that she should have been transferred and that it was unfair to be terminated, Gonzalez's subjective opinion is insufficient proof of racial or sex-based animus. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002); *Lee v. New York State Dept. of Health*, Nos. 98Civ.5712, 99Civ.4859(RMB)(HBP), 2001 WL 34031217, at *28 (S.D.N.Y Apr. 23, 2001). Beyond conclusory statements, Gonzalez fails to provide evidence that would enable a reasonable factfinder to conclude that DOT's reasons were a pretext, and that her protected status was at least one of the motivating factors in DOT's decision. As such, Gonzalez has failed to meet her burden, and her Title VII claim should be **DISMISSED**.

**D.     Gonzalez's Claims Of Invasion Of Privacy And Sexual Harassment Are Not Viable**

Gonzalez claims that DOT Inspector Smalls invaded her privacy by taking her picture while she was sleeping while on duty. New York law prohibits the commercial use of a person's likeness or name without their consent, N.Y. Civ. R. Law §§ 50, 51 (McKinney 2009), but does not recognize a common law cause of action for invasion of privacy. *See Mack v. U.S., F.B.I.*, 653 F. Supp. 70, 76 (S.D.N.Y. 1986). Gonzalez has not alleged that DOT or AlliedBarton used

12

her photo for a commercial use, and the evidence shows that the photo was used for an internal disciplinary review of Gonzalez's employment. Furthermore, Gonzalez cannot establish that she had a reasonable expectation of privacy within the Flatlands security booth.

"Without a reasonable expectation of privacy, a workplace search by a public employer will not violate the Fourth Amendment, . . . . The workplace conditions can be such that an employee's expectation of privacy in a certain area is diminished. *Leventhal v. Knapek*, 266 F.3d 64, 73(2d Cir. 2001) (citing *O'Connor v. Ortega*, 480 U.S. 709, 717-18 (1987) (Some workplaces are "continually entered by fellow employees and other visitors during the workday for conferences, consultations, and other work-related visits," can be "so open to fellow employees or the public that no expectation of privacy is reasonable."). "[I]n certain situations, the 'operational realities' of the workplace may remove some expectation of privacy on the part of the employee." *O'Connor*, 480 U.S. at 737 (Blackman, J., dissenting).

Smalls photographed Gonzalez pursuant to his investigation of safety breaches at DOT sites, and he was outside of the booth when he photographed Gonzalez. Even if he had entered the booth, it was supposed to remained unlocked, accessible to all of the DOT employees at the site, and was the place where security officers were to remain while on duty.

Finally, Gonzalez has included a new claim for sexual harassment in her opposition to Defendants' motions. She alleges that she was harassed when her photo was taken. She has failed to plead this claim in either of her Complaints, and she may not raise this new claim in her opposition papers. *Hawana v. City of New* York, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002). *See McAllister v. New York City Dept.*, 49 F. Supp. 2d 688, 691 (S.D.N.Y. 1999). Furthermore, during her deposition, Gonzalez contradicted her allegation by denying that she was subjected to

13

harassment while employed as a security guard. (Gonzalez Dep. at 174-75.)

## IV. CONCLUSION

For the reasons stated above, I recommend that the Motions for Summary Judgment brought by the City and AlliedBarton (Doc Nos. 61 & 66) be **GRANTED** and that the Complaint be **DISMISSED** in its entirety. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: September 7, 2010**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

Copies of this Report and Recommendation were sent to:

For Plaintiff, Pro Se
Aja Gonzalez
249 Thomas S. Bayland St., #8E
Brooklyn, NY 11233

14

For Defendant AlliedBarton

Geraldine Ann Cheverko
Eckert, Seamans, Cherin & Mellott LLC
10 Bank Street
White Plains, NY 10606

Matthew D. Crawford
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E.
Suite 400
Atlanta, GA 30326

Defendant Department of Transportation-City of New York

Abra Mason
Assistant Corporation Counsel
100 Church St.
Room 2-318
New York, NY 10007